FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

13 MAY -2 PM 3:52

UNITED STATES OF AMERICA

v.                                                          CASE NO. 8:13-cr-232T30EAJ

SAMUEL WAHBA                               18 U.S.C. § 371
                                                              18 U.S.C. § 982(a)(7) - Forfeiture
                                                              18 U.S.C. § 981(a)(1)(C) - Forfeiture
                                                              28 U.S.C. § 2461(c) - Forfeiture

## INFORMATION

The United States Attorney charges:

### COUNT ONE
### (Conspiracy - 18 U.S.C. § 371)

### Introduction

At all times material to this Information:

**A.   The Medicaid Program**

1.   The Medicaid Program ("Medicaid"), as established by the Social Security Act, was a cooperative federal-state health care benefit program that enabled the states to furnish necessary medical benefits, items, and services to indigent families and individuals ("Medicaid beneficiaries") who were unable to meet the costs of the benefits, items, and services.

2.   The State of Florida administered Medicaid through the Florida Agency for Health Care Administration ("AHCA").

3. In order to be reimbursed by Medicaid, an entity providing medical benefits and services to Medicaid beneficiaries (the "provider") first had to enter into a Medicaid Provider Enrollment Agreement. This Medicaid Provider Enrollment Agreement was submitted to AHCA for approval.

4. A private corporation under contract with ACHA acted as a "fiscal intermediary" and was authorized to receive and process Medicaid claims on behalf of ACHA. To receive reimbursement for benefits or services provided to a Medicaid beneficiary, the provider transmitted a claim for reimbursement to the fiscal intermediary. Providers were reimbursed with federal funds.

**B.   The Medicare Program, Part D**

5. The Medicare Program ("Medicare") was a federal health care benefit program that provided medical benefits, items and services to persons age 65 and older or with certain disabilities ("Medicare beneficiaries").

6. The Centers for Medicare and Medicaid Services ("CMS"), an agency within the United States Department of Health and Human Services, oversaw and administered Medicare throughout the United States.

7. Medicare included coverage under several components. Part D of Medicare ("Medicare Part D") subsidized the costs of providing prescription drugs to Medicare beneficiaries in the United States. Medicare Part D was enacted as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, which went into effect on January 1, 2006.

8. Private insurance plans administered Medicare Part D benefits (the "Medicare Part D plans"). These Medicare Part D plans then sought reimbursement from Medicare, through CMS, for the benefits provided to Medicare beneficiaries.

9. A pharmacy could contract with one or more Medicare Part D plans to provide covered benefits to Medicare beneficiaries. By contracting with these Medicare Part D plans, a pharmacy could provide covered benefits (*i.e.*, dispense prescription drugs) to Medicare beneficiaries and expect reimbursement from Medicare for providing such benefits. A pharmacy that furnished Medicare Part D benefits could also submit claims for payment to a Medicare Part D plan with which it did not have a contract. In either case, the pharmacy would submit a claim for reimbursement to the particular Medicare Part D plan for prescription benefits provided to the Medicare beneficiary. The pharmacy used the Medicare beneficiary's health insurance claim number and/or the Medicare Plan Identification number to submit a claim for reimbursement to the Medicare Part D plan. Ultimately, the Medicare Part D plan would send a reimbursement check to the pharmacy or initiate an electronic transfer of funds to the pharmacy's bank account for the benefits provided to the beneficiary. The Medicare Part D plan then sought reimbursement from Medicare, through CMS, for payments made to the pharmacy. CMS reimbursed Medicare Part D plans with federal funds.

C.   **TRICARE**

10.   TRICARE was a triple option health care benefit plan of the United States Department of Defense Military Health System. Eligible TRICARE beneficiaries included members of all seven branches of the Uniformed Services: Army, Air Force, Navy, Marine Corps, National Oceanic Atmospheric Administration, Coast Guard, and the commissioned corps of the Public Health Service. TRICARE received federal funds allocated through the annual Department of Defense Appropriation Acts. A private corporation under contract with TRICARE acted as a "fiscal intermediary" and was authorized to receive and process claims for reimbursement on behalf of TRICARE. Health care service providers (such as pharmacies) were reimbursed with federal funds for benefits and services provided to TRICARE beneficiaries.

D.   **The Defendant's Exclusion from All Federal Health Care Programs**

11.   **SAMUEL WAHBA** was a pharmacist licensed in the State of Florida and a resident of Pinellas County, Florida.

12.   On or about August 10, 2001, SAMUEL WAHBA was convicted of one count of violating the Florida Racketeering Influenced and Corrupt Organization Act (RICO), one count of Medicaid Provider Fraud, one count of Grand Theft (Second Degree), and one count of Grand Theft (Third Degree), in the *State of Florida v. Samuel Wahba*, Case No. CRC00-15237CFANO, in the Circuit Court of the Sixth Judicial Circuit, in and for Pinellas County, Florida (the

4

"2001 felony convictions"). The 2001 felony convictions arose out of SAMUEL WAHBA's operation of Clover Pharmacy, located at 3325 Tampa Road, in Palm Harbor, Florida.

13. On or about July 31, 2002, SAMUEL WAHBA received notice that he was "excluded in any capacity from participation in the Medicare, Medicaid, and **all** Federal health care programs as defined in section 1128B(f) of the Social Security Act (Act) for a minimum period of 15 years." (emphasis in original). This exclusion was based on SAMUEL WAHBA's 2001 felony convictions. This exclusion notice also advised SAMUEL WAHBA of the following:

> You are excluded from participation in the Medicare, Medicaid, and **all** Federal health care programs as defined in section 1128B(f) (42 U.S.C. 1320a-7b) of the Social Security Act. The effect of this exclusion is that no program payment will be made to you for anything that you do, order, or prescribe, or to any employer for anything that you do, order, or prescribe to program patients . . . during the period you are excluded.
>
> This exclusion is global, regardless of your job or location. It applies in all States and in all programs. It applies to all Federal procurement and non-procurement programs and activities.
>
> \* \* \*
>
> Notwithstanding 42 U.S.C. 1395w-4(g)(4), any service you provide is a non-covered service. Therefore, you cannot submit claims or cause claims to be submitted for payment under any Federal health care program. Violations of the conditions of your exclusion may subject you to criminal prosecution, the imposition of civil monetary penalties (42 U.S.C. 1320a-7a – 42 U.S.C. 1320a-7b), and the denial of your reinstatement to the programs.
>
> \* \* \*

> **YOUR REINSTATEMENT IS NOT AUTOMATIC.** You will not be reinstated at the conclusion of the minimum period of exclusion, or anytime thereafter, **UNLESS YOU APPLY TO THE OIG AND ARE GRANTED REINSTATEMENT** to the Medicare and Federal health care programs under the provisions of 42 U.S.C. 1320a-7(g) and 42 CFR 1001.3001–.3005.

(emphasis in original).

### E. The Defendant's Ownership and Operation of St. George Pharmacy

14. On or about October 15, 2002, approximately two and a half months after his exclusion from participating in all federal health care programs, SAMUEL WAHBA used a nominee (hereinafter referred to as "Nominee I.N.") to register **St. George Pharmacy, Inc. ("St. George Pharmacy")** with the Florida Secretary of State, Division of Corporations. The Electronic Articles of Incorporation listed St. George Pharmacy as being located at 3325 Tampa Road, in Palm Harbor, Florida—the same location as Clover Pharmacy, which SAMUEL WAHBA previously owned and operated. Pursuant to the Articles of Incorporation, Nominee I.N. was the sole incorporator, officer, director, and registered agent of St. George Pharmacy. In truth and in fact, SAMUEL WAHBA was the sole owner and operator of St. George Pharmacy. SAMUEL WAHBA used Nominee I.N. to register St. George Pharmacy with the Florida Secretary of State to conceal his connection with the pharmacy.

15. On or about December 5, 2002, SAMUEL WAHBA and Nominee I.N. opened a corporate signature card account in the name of St. George Pharmacy at Bank of America. SAMUEL WAHBA signed the signature card for

this bank account, representing himself to be the "Manager" of St. George Pharmacy. Nominee I.N. was falsely listed on the signature card as the "President" of St. George Pharmacy.

16. In order to bill Medicaid, a provider was required to first obtain a Medicaid Provider Number. On or about January 6, 2003, AHCA received a Medicaid Provider Enrollment Application from St. George Pharmacy, purportedly signed by Nominee I.N. The Medicaid Provider Enrollment Application required the applicant to "identify all managers, billing agents, officers, directors and principal owners" of St. George Pharmacy. Notwithstanding this requirement, the Medicaid Provider Enrollment Application omitted any mention of SAMUEL WAHBA and falsely represented that Nominee I.N. was a 100% owner of St. George Pharmacy. In addition, the Medicaid Provider Enrollment Application required the applicant to explain whether any of the individuals listed as managers, billing agents, officers, directors and principal owners of St. George Pharmacy had ever been: (a) convicted of a felony, and (b) excluded from Medicare or Medicaid in any state. By omitting SAMUEL WAHBA as a manager and principal owner of St. George Pharmacy, SAMUEL WAHBA was able to conceal from AHCA his 2001 felony convictions and exclusion from participating in Medicaid, Medicare, TRICARE, and all other federal health care programs. As a result, on or about January 6, 2003, AHCA issued a Medicaid Provider Number to St. George Pharmacy and, subsequently, St. George

Pharmacy began submitting claims for reimbursement to Medicaid for prescription services provided to Medicaid beneficiaries.

17. During the course of St. George Pharmacy's operations, it entered into contracts with various pharmacy networks that administered Medicare Part D and TRICARE. By virtue of St. George Pharmacy's participation in these pharmacy networks, St. George Pharmacy was also able to submit claims for reimbursement to Medicare Part D and TRICARE.

18. From on or about October 15, 2002, through the present day, SAMUEL WAHBA has been the sole owner and operator of St. George Pharmacy, notwithstanding his exclusion from participation in all federal health care programs.

19. Between on or about July 28, 2003 and August 1, 2012, St. George Pharmacy—through SAMUEL WAHBA's ownership, direction, and control—submitted thousands of claims for reimbursement to Medicaid, Medicare Part D, and TRICARE (through their respective fiscal intermediaries and pharmacy networks), and, in return, received over $5,000,000.00 in reimbursement from these federal health care programs.

## The Conspiracy

20.  Beginning on an unknown date, but at least as early as on or about October 15, 2002, and continuing up through the date of this Information, in the Middle District of Florida and elsewhere, the defendant,

SAMUEL WAHBA,

did knowingly and willfully combine, conspire, confederate, and agree with other individuals both known and unknown, to commit certain offenses, that is:

    a.  to knowingly and willfully execute and attempt to execute, in connection with the delivery of and payment for health care benefits, items, and services, a scheme and artifice to defraud certain health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), namely, Medicaid, Medicare Part D, and TRICARE, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicaid, Medicare Part D, and TRICARE, in violation of Title 18, United States Code, Section 1347;

    b.  to knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation and use a false writing and document knowing the same to contain a materially false, fictitious and fraudulent statement and entry, in a matter within the executive branch of the Government of the United States, in particular, the submission of a Medicaid

Provider Enrollment Application to AHCA which falsely represented that Nominee I.N. was the owner and operator of St. George Pharmacy and concealed SAMUEL WAHBA's ownership and operation of St. George Pharmacy, in violation of Title 18, United States Code, Sections 1001(a)(2) and (a)(3);

    c.    to knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, and make and use materially false writings and documents, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services, in a matter involving certain health care benefit programs affecting commerce, namely, Medicaid, Medicare Part D, and TRICARE, in violation of Title 18, United States Code, Section 1035(a)(2); and

    d.    having knowledge of the occurrence of an event, specifically, that SAMUEL WAHBA had been excluded from participation in any and all federal health care programs for a minimum period of 15 years and was actively participating in the operation of St. George Pharmacy, which affected St. George Pharmacy's initial and continued right to payment under any and all federal health care programs, including, Medicaid, Medicare Part D, and TRICARE, did conceal and fail to disclose such event with the intent fraudulently to secure such payments from Medicaid, Medicare Part D, and TRICARE, when no such

10

payments were authorized, in violation of Title 42, United States Code, Section 1320a-7b(a)(3).

## Manner and Means of the Conspiracy

21. The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among other things, the following:

    a. It was a part of the conspiracy that SAMUEL WAHBA would and did own and operate St. George Pharmacy;

    b. It was further part of the conspiracy that the conspirators would and did form St. George Pharmacy in such a fashion as to conceal SAMUEL WAHBA's ownership and control of the pharmacy from all federal health care programs, including Medicaid, Medicare Part D, and TRICARE;

    c. It was further part of the conspiracy that a conspirator would and did submit a Medicaid Provider Enrollment Application to AHCA omitting SAMUEL WAHBA's ownership of and managerial role in the operation of St. George Pharmacy;

    d. It was further part of the conspiracy that the conspirators would and did serve as nominee owners of St. George Pharmacy to conceal SAMUEL WAHBA's ownership and operation of St. George Pharmacy from Medicaid, Medicare Part D, and TRICARE;

e. It was further part of the conspiracy that the conspirators would and did submit millions of dollars in claims for reimbursement to Medicaid, Medicare Part D, and TRICARE, notwithstanding SAMUEL WAHBA's exclusion from participation in any and all federal health care programs;

f. It was further part of the conspiracy that the conspirators would and did receive over $5,000,000.00 in reimbursement payments from Medicaid, Medicare Part D, and TRICARE and deposited those fraudulently-obtained federal health care funds into various bank accounts; and

g. It was further part of the conspiracy that conspirators would and did misrepresent, conceal, hide, and cause to be misrepresented, concealed, and hidden, acts done in furtherance of the conspiracy and the purpose of those acts.

## Overt Acts

22. In furtherance of the conspiracy and to effectuate the objects thereof, the following overt acts, among others, were committed within the Middle District of Florida, and elsewhere:

a. On or about October 15, 2002, SAMUEL WAHBA used Nominee I.N. to register St. George Pharmacy with the Florida Secretary of State, Division of Corporations;

b. On or about December 5, 2002, SAMUEL WAHBA and Nominee I.N. opened a corporate signature card account in the name of St. George Pharmacy at Bank of America;

c. On or about December 5, 2002, SAMUEL WAHBA submitted, or caused to be submitted, to AHCA a Medicaid Provider Enrollment Application for St. George Pharmacy that fraudulently misrepresented Nominee I.N. as the sole owner of St. George Pharmacy and concealed SAMUEL WAHBA's ownership interest in the pharmacy, his 2001 felony convictions, and his exclusion from participation in all federal health care programs;

d. On or about June 26, 2004, SAMUEL WAHBA caused St. George Pharmacy to submit a claim for reimbursement to Medicaid in the amount of $289.62 for dispensing a prescription of Lidoderm to Medicaid beneficiary M.V.;

e. On or about November 25, 2009, SAMUEL WAHBA caused St. George Pharmacy to submit a claim for reimbursement to TRICARE in the amount of $319.41 for dispensing a prescription of Nexium to TRICARE beneficiary B.T.; and

f. On or about January 25, 2012, SAMUEL WAHBA caused St. George Pharmacy to submit a claim for reimbursement to Medicare Part D in the amount of $103.15 for dispensing a prescription of Plavix to Medicare Part D beneficiary L.O.

All in violation of Title 18, United States Code, Section 371.

## **FORFEITURE**

1. The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982(a)(7), and Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. From his engagement in the violations alleged in Count One of this Information, the defendant,

SAMUEL WAHBA,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7) any and all right, title, and interest he may have in any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to such violations and, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the conspiracy described in Count One of the Information. The property to be forfeited includes, but is not limited to, a forfeiture money judgment in the amount of $5,281,931.00, which represents the amount of proceeds traceable to the conspiracy charged in Count One of the Information.

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

ROBERT E. O'NEILL
United States Attorney

By: *[signature]*
SIMON GAUGUSH
Assistant United States Attorney

By: *[signature]*
ROBERT MOSAKOWSKI
Assistant United States Attorney
Chief, Economic Crimes Section

15